NOT FOR PUBLICATION

<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

In re:

HOLLISTER CONSTRUCTION
SERVICES, LLC,

      Debtor.

---

Bernard Katz, in his capacity as Liquidating Trustee
for the Bankruptcy Estate of Hollister Construction
Services, LLC,

      Plaintiff,

    v.

FM Construction Group, LLC,

      Defendants.

</td><td>

Case No. 19-27439 (MBK)

Chapter 11

Adv. Pro. No. 22-01037 (MBK)

Hearing Date:  February 23, 2023

</td></tr>
</table>

**Philip W. Allogramento III, Esq.**
Connell Foley LLP
56 Livingston Ave.
Roseland, NJ 07068
*Counsel for Defendant, FM Construction Group, LLC*

**Louis Modugno, Esq.**
Trif & Modugno LLC
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, NJ 07960
*Counsel for Plaintiff, Bernard Katz, Liquidating Trustee*

## MEMORANDUM DECISION

This matter comes before the Court upon the motion ("Motion") filed by Defendant, FM

Construction Group, LLC ("Defendant" or "FM") seeking leave to file a third-party complaint and

counterclaims.  Plaintiff, Bernard Katz, in his capacity as Liquidating Trustee for the Bankruptcy

Estate of Hollister Construction Services, LLC ("Plaintiff" or "Trustee") filed opposition to the Motion and a cross-motion ("Cross-Motion") seeking to enforce the terms of a settlement order. The Court has fully considered the parties' submission, including arguments made during the February 23, 2023, hearing held on the Motion and Cross-Motion. For the reasons expressed below, the Court DENIES the Trustee's Cross-Motion; and DENIES in part and GRANTS in part FM's Motion.

## I.        Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) & (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409.

## II.       Background and Procedural History

The factual and procedural history of this case is well known to the parties and will not be repeated in detail here. In relevant part, Hollister Construction Services, LLC ("Hollister") was a general commercial construction services firm that provided construction management services for construction projects. FM is a subcontractor who entered into a contract with Hollister that governs all projects on which FM worked for Hollister (the "Master Agreement"). The parties agreed to execute separate project-specific agreements, which would provide details about a given project in which they engaged. On or about September 25, 2017, Hollister entered into a construction management agreement with the owners ("Owner") of residential buildings in

Harrison, New Jersey (the "Project").  Hollister then entered into a project-specific subcontracting agreement with FM (together with their Master Agreement, the "Subcontract") in which FM agreed to provide certain services to Hollister in connection with the Project.  While the Project was ongoing, Hollister filed for bankruptcy under Chapter 11 on September 11, 2019 (the "Petition Date").

After the Petition Date, Hollister, the Owner, and multiple subcontractors—including FM—negotiated and executed a settlement agreement (the "Settlement Agreement") on December 13, 2019.  Per the Settlement Agreement, FM agreed to a 60% reduction in the amounts owed pre-petition, but would be fully compensated for work done post-petition.

For various reasons, the Project was delayed and FM was unable to resume its work. Hollister and the Owner resolved disagreements regarding the Project by amending the Settlement Agreement and extending the Project completion date.  FM contends that neither it nor other subcontractors were consulted regarding these amendments, and they did not sign the amended Settlement Agreement.  FM further contends that, although it remained ready and willing to return to work, the Project was not in sufficient condition for FM to return and complete work because of delays on Hollister's end.  Finally, on February 24, 2021, Hollister sent FM a "48 Hour Notice to Perform" letter citing FM's alleged failure to perform its obligations under the Subcontract and the Settlement Agreement.  FM offered to staff the Project but concedes it could not provide a full crew on short notice.  Ultimately, Hollister terminated FM's Subcontract to ensure the work was

3

completed in the required timeframe.  In a letter dated March 12, 2021, Hollister provided a Notice

of Termination which terminated FM for cause.[1]

Meanwhile, Hollister's bankruptcy case continued.  This Court confirmed Debtor's plan of

liquidation (the "Plan") in an order dated April 16, 2021 (the "Confirmation Order").  The

Confirmation Order established a liquidating trust (the "Trust") and appointed the Trustee to

oversee Debtor's assets and the complete wind-down of Debtor's business.  As part of the

Confirmation Order, claimholders were precluded from asserting claims against the Debtor or the

Trust that accrued prior to the April 30, 2021, effective date of the Plan. *See, e.g.*, *Confirmation

Order* ¶¶ J, X, ECF No. 1769 in Case No. 19-27439.  The Confirmation Order did, however,

preserve parties' rights to setoff or recoupment. *Id.* at ¶ T.  The Plan contained similar provisions.

*See, e.g.*, *Plan of Liquidation* Article 8.1, 8.12, 9.3, ECF No. 1196 in Case No. 19-27439.

Following FM's termination, Hollister contracted for the completion of the work that had

been assigned to FM.  On January 31, 2022, the Trust filed an adversary complaint against FM

seeking, among other things, to recover the Debtor's costs to complete FM's scope of work under

the parties' agreements which exceeded FM's contract balance on the Project, as of the date of the

Notice of Termination.  Hollister claims the Trust has incurred more than $500,000 above the

contract balance to complete FM's obligations.  FM filed an Answer and the parties attempted

mediation, which was unsuccessful.  FM then filed the instant Motion seeking leave to file

---

[1] FM contends that the March 12, 2021, letter was the "second termination letter" and that "Hollister advised that it
was terminating FM's Subcontract" approximately 24 hours after it sent the 48 Hour Notice to Perform, which
violated the parties' Subcontract. *Proposed Counterclaims Against Hollister* (*Exhibit F to Certification of Counsel*)
107-109, ¶46-53, ECF No. 11-2.  The Court need not decide the precise date of FM's termination to resolve the
pending Motion.

counterclaims against Hollister and a third-party complaint against the Owner.  Specifically, FM seeks to assert the following counterclaims against Hollister: (1) breach of contract (including the Subcontract and the Settlement Agreement); (2) unjust enrichment; (3) breach of implied covenant of good faith and fair dealing; (4) quantum meruit; (5) declaratory judgment that termination was wrongful and done in bad faith; and (6) fraudulent inducement (collectively, the "Proposed Counterclaims"). *Proposed Counterclaims Against Hollister* (*Exhibit F to Certification of Counsel*) 99-116, ECF No. 11-2.  Similarly, FM seeks to assert the following claims against the Owner in a Third-Party Complaint: (1) breach of contract; (2) unjust enrichment; (3) breach of implied covenant of good faith and fair dealing; (4) quantum meruit; and (5) fraudulent inducement (collectively, the "Proposed Third-Party Complaint"). *Proposed Third Party Complaint against Accordia Harrison Urban Renewal LLC* (*Exhibit G to Certification of Counsel*) 118-130, ECF No. 11-2. The Liquidating Trustee filed Opposition to FM's Motion and filed a Cross-Motion seeking to enforce Court Orders and the parties' agreements.  The Trustee contends that FM is bound by the terms of the Plan and the parties' agreements and, as such, is barred, enjoined, and otherwise precluded from bringing any claims that accrued prior to the effective date of the Plan against the Debtor, the Trust, or the Owners.  The Trustee frames FM's motion as a collateral attack on the Confirmation Order and the Court's order approving the Settlement Agreement under Federal Rule of Bankruptcy Procedure 9024.  The Trustee submits that FM's claims are barred as a matter of law and leave to amend should be denied as futile.

### III.     Legal Discussion

Under Federal Rule of Civil Procedure 15(a), made applicable by Federal Rule of Bankruptcy Procedure 7015, leave to amend pleadings shall be "freely give[n]" when "justice so requires." FED. R. CIV. P. 15(a)(2).  A court may, however, deny a motion to amend on the grounds of "undue delay, bad faith, dilatory motive, prejudice, and futility." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *see also LaGuardia v. Ross Twp.*, 705 F. App'x 130, 132 n.6 (3d Cir. 2017).  An amendment is futile if the proposed amended complaint includes a claim that "would fail to state a claim upon which relief could be granted." *Shane*, 213 F.3d at 115.  As a result, in evaluating futility, courts employ the "same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*  Accordingly, the Court reviews FM's Proposed Counterclaims Against Hollister and Proposed Third-Party Complaint to determine whether the counts therein would survive a Rule 12(b)(6) motion.

### A.  Proposed Third-Party Complaint

The Court begins by examining FM's proposed claims against the Owner.  During oral argument, this Court questioned whether it had jurisdiction to decide a post-confirmation dispute between non-debtors.  The parties indicated—vaguely—that any amounts FM may recover from the Owner would affect amounts that the Trustee is expecting to collect from the Owner.  FM's counsel indicated that its litigation against the Owner would allow this Court to understand how much will come into the Trust and what will "trickle down the waterfall" into the Plan.  Counsel for the Trustee likewise indicated that the Trust will be negatively impacted if FM were to recover

against the Owner.  However, neither party adequately explained the impact of post-confirmation nondebtor litigation on the Trust or its relationship to the Plan or the existing adversary proceeding.

The Third Circuit has clarified that "the jurisdiction of the non-Article III bankruptcy courts is limited after confirmation of a plan." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 168 (3d Cir. 2004). Courts must inquire "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.* at 166–67.  Put differently, "[a]t the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding." *Id.* at 167.   The Third Circuit has held that "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id*; *see also In re Seven Fields Dev. Corp.*, 505 F.3d 237, 258 (3d Cir. 2007).

Although neither party challenges this Court's jurisdiction, this Court is nevertheless obligated to assure itself of subject matter jurisdiction. *See Greene v. Sloane*, 783 F. App'x 108, 110 n.2 (3d Cir. 2019) (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003) ("[C]ourts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt.")); *Generational Equity LLC v. Schomaker*, 602 F. App'x 560, 561 (3d Cir. 2015); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (discussing a court's continuing obligation to assess its subject matter jurisdiction).  Thus, this Court considers whether FM's Proposed Third–Party Complaint bears a close nexus to the Plan or adversary proceeding. *See In re: Green Field Energy Servs., Inc.*, 554 B.R. 315, 320 (Bankr. D. Del. 2016).

Here, the Court finds that it would not have subject matter jurisdiction over FM's claims against the Owner.  As an initial matter, neither the Trust nor the Trustee is associated with the Proposed Third–Party Complaint—except that the Trustee opposes the Motion.  More importantly, the Proposed Third–Party Complaint does not have a close nexus to the Plan or the pending adversary proceeding.  Indeed, the claims FM seeks to assert against the Owner do not help to interpret, implement, consummate, execute, or administer Debtors' plan of liquidation. *Resorts*, 372 F.3d at 170.  Instead, the claims allege breach of contract by the Owner and seek various forms of equitable relief relating to that breach.  Only FM's claim for fraudulent inducement exists independent of the alleged breach of contract.  However, that claim suffers from the same jurisdictional defect—it does not help to interpret, implement, consummate, execute or administer the Plan.  Because the claims in the Proposed Third-Party Complaint lack the requisite close nexus, this Court does not have jurisdiction. *Id.*  Accordingly, amendment to assert the Proposed Third-Party Complaint would be futile and FM's Motion is denied in that regard, with prejudice.

### B.  Proposed Counterclaims Against Hollister

The Court now turns to FM's Proposed Counterclaims against Hollister.  The Court does not harbor the same jurisdictional doubts with respect to the counterclaims that it did for the third-party claims.  Thus, this Court's inquiry focuses on whether the Proposed Counterclaims against Hollister would survive a Rule 12(b)(6) motion. *Shane*, 213 F.3d at 115.

In its proposed complaint, FM seeks to assert counterclaims against Hollister for: (1) breach of contract (including the Subcontract and the Settlement Agreement); (2) unjust enrichment; (3) breach of implied covenant of good faith and fair dealing; (4) quantum meruit; (5)

declaratory judgment that termination was wrongful and done in bad faith; and (6) fraudulent

inducement. *Proposed Counterclaims Against Hollister* (*Exhibit F to Certification of Counsel*) 99-

116, ECF No. 11-2.  The Trustee asserts that these Proposed Counterclaims are expressly barred

by the terms of the parties' Settlement Order, the Confirmation Order, the Plan, and/or the parties'

Subcontract agreement.  The Trustee frames FM's Motion as an attack of those orders under

Federal Rule of Bankruptcy Procedure 9024 and seeks to enforce those orders by way of the Cross-

Motion.

Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy cases by Federal

Rule of Bankruptcy Procedure 9024, provides relief from a judgment or order.  Here, the Trustee

argues that FM has not set forth any good faith basis for vacating either the Settlement Order or

the Confirmation Order under Rule 60(b).  However, to the extent the Trustee argues that FM is

limited by the relief available under Rule 60(b), that position is unsupportable.  The Court does

not interpret FM's motion as one under Rule 60(b), which applies when a party seeks to vacate, or

otherwise be granted relief from, a particular judgment or order.  Here, FM is not seeking relief

from an order, but rather damages or a reduction in liability for affirmative claims.  While the

Trustee may cite the Settlement Order and Confirmation Order as bases for denying FM's

requested relief—as it has—Rule 60(b) remains inapplicable.

The Court further clarifies that FM's fraudulent inducement claims are not time-barred as

argued by the Trustee because the "fraud" alleged by FM is not presented as grounds for relief

under Rule 60(b), which must be asserted within one year after entry of the judgment or order. *See*

FED. R. CIV. P. 60(b)(3) (citing fraud, misrepresentation, or misconduct by an opposing party as

grounds for relief from a final judgment, order, or proceeding); FED. R. CIV. P. 60(c)(1) (imposing

time restrictions on a motion for relief under Rule 60(b)).  Rather, FM's fraudulent inducement

claim sounds in the tort of fraud under New Jersey law, which carries with it a six-year statute of

limitations. *See e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Powers, No.* A-4404-15T4, 2018 WL 1569334,

at *4 (N.J. Super. Ct. App. Div. Apr. 2, 2018) (citing N.J. STAT. ANN. 2A:14–1; *Mirra v. Holland*

*America Line*, 331 N.J. Super. 86, 90 (App. Div. 2000).  "This time period is measured from the

time the claim accrued, that is, the date defendants knew or should have known of their cause of

action." *Powers*, 2018 WL 1569334 at *4 (citing *O'Keefe v. Snyder*, 83 N.J. 478, 491 (1980)); *see*

*also Com. Grp., Inc. v. Dipentino*, No. A-5120-12T3, 2014 WL 8663287, at *6-7 (N.J. Super. Ct.

App. Div. Apr. 23, 2015).  Here, the six-year statute of limitation on FM's proposed fraud claim

has not lapsed.  Nevertheless, for reasons discussed below, the Court finds that FM's proposed

fraudulent inducement claim (Count VI of the Proposed Counterclaims) would fail under a Rule

12(b)(6) analysis and, therefore, the Motion must be denied as it pertains to that claim.

### 1. Count VI – Fraudulent Inducement

In its fraudulent inducement claim, FM contends that "Hollister encouraged FM to enter

into the Settlement Agreement knowing that it was unlikely to be paid for work by the [O]wner."

*Proposed Counterclaims* ¶91, ECF No. 11-2.  In sum, FM asserts that Hollister knew it was not

capable of managing the Project but nevertheless made knowingly false representations regarding

both its ability and the likelihood that FM would be paid to induce FM to enter into the Settlement

Agreement.  FM cites the fact that there were delays—including COVID delays and payment

disputes with the Owner—and points out that, during the summer of 2020, Hollister acknowledged

10

that the Project was not in sufficient condition for FM to return to complete its work.  FM further states that it ordered materials at Hollister's direction and has not been fully reimbursed for this expense.  FM concedes that in January 2021, Hollister requested that FM remobilize—albeit without paying the remobilization fee—and sent FM a preliminary list of work.  Hollister also sought to schedule a February 17, 2021, meeting with FM to discuss a specific work timeline. "FM responded by asking if all preparatory work was completed, as agreed between the parties." *Proposed Counterclaims* ¶45, ECF No. 11-2.  The meeting never occurred, and on February 24, 2021, Hollister sent the "48 Hour Notice to Perform" to FM.

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for allegations of fraud and requires "sufficient particularity to place the defendant on notice of the precise misconduct for which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing FED. R. CIV. P. 9(b)).  To satisfy this stringent pleading requirement, plaintiffs must "support their allegations of . . . fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' . . . the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)). A claim for fraudulent inducement triggers this heightened pleading requirement. *See, e.g.*, *In re Aspect Software Parent, Inc.*, 578 B.R. 718, 723 (Bankr. D. Del. 2017) (applying pleading requirements of Rule 9(b) to plaintiff's fraudulent inducement claim); *Kare Distribution, Inc. v. Jam Labels & Cards LLC*, No. 09-00969, 2009 WL 3297555, at *4 (D.N.J. Oct. 9, 2009) ("[A] claim for fraudulent inducement must meet the requirements of Fed R. Civ. P. 9(b). . . .").  The

Court finds that FM has failed to plead its fraudulent inducement claim with sufficient particularity to survive a Rule 12(b)(6) motion to dismiss.

"To establish a claim for fraudulent inducement, a party must show the following: '(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment.' " *Evonik Corp. v. Hercules Grp., Inc*., No. 16-7098, 2018 WL 5095991, at *8 (D.N.J. Oct. 18, 2018) (quoting *RNC Sys., Inc. v. Modern Tech. Grp., Inc*., 861 F. Supp. 2d 436, 451 (D.N.J. 2012)); *see also Furey v. Leonard Buck Tr*., No. A-2242-20, 2022 WL 2838831, at *16 (N.J. Super. Ct. App. Div. July 21, 2022), cert. denied, No. 087388, 2023 WL 1990694 (N.J. Feb. 10, 2023)).   Here, FM makes only broad allegations regarding Hollister's knowledge and subjective intent, which are undercut by FM's own assertions and the facts of the case.   Contrary to FM's contentions, the record demonstrates that Hollister intended to both complete the Project and pay its subcontractors.   Indeed, Hollister alleges—and FM does not dispute—that FM received a payment on the Project as late as December 2020. *Cross-Motion* 13, ECF No. 15-2.   Moreover, Counsel for Hollister represented during the hearing that the vast majority of the subcontractors who were parties to the Settlement Agreement (32 of the total 34 subcontractors) abided by the agreement and received payment.   Counsel for FM does not dispute this claim.

Undeniably, the Project faced delays.   However, delays in construction projects are not unusual and FM acknowledges that at least some of the delays were attributable to the COVID-19 pandemic and payment disputes with the Owner.   As to the latter, Hollister worked to resolve those disputes by amending the Settlement Agreement.   The Court also considers that Hollister took

steps to complete the Project.  Not only did Hollister arrange for the completion of the work that

was within the scope of FM's contract, FM reports that Hollister paid for *additional* work—such

as the framing of the arch at the front entrance—that was beyond the scope of FM's contract.

*Motion* 14, ECF No. 11-1.  And, although the Project remains unfinished, Counsel for the Trustee

represented on the record that the parties were almost at the "punch list stage" of the contract—

meaning, the Project is close to completion.  Given this record and the absence of more specific

allegations in the Proposed Counterclaims, the Court cannot find that FM pleaded its claim for

fraudulent inducement with the requisite Rule 9(b) particularity.   Because the proposed

counterclaim fails to state a claim for fraudulent inducement upon which relief could be granted,

FM's Motion is denied as to that claim, without prejudice. *Shane*, 213 F.3d at 115.

## 2.  Counts I through V (as Affirmative Claims)

As to the remaining Proposed Counterclaims (Counts I through V), the Court finds that

they accrued prior to the effective date of the Plan and are, thus, barred, enjoined, or otherwise

precluded by operation of the Confirmation Order and Plan from being asserted as affirmative

claims.[2]  Debtor's Plan was confirmed on April 16, 2021, and was deemed effective on April 30,

2021 ("Effective Date").   Pursuant to the clear terms of the Plan and Confirmation Order, any

claims against the Debtor that existed at the time of confirmation were released as of the Effective

Date. *See Confirmation Order* ¶ X, ECF No. 1769 in Case No. 19-27439; *Plan of Liquidation* §§

8.12, 9.3, ECF No. 1196 in Case No. 19-27439.  The Plan and Confirmation Order bar and enjoin

parties from brining actions related to those pre-Effective Date claims against the Trustee or the

---

[2] As will be discussed, these claims can be asserted in the context of FM's right to recoupment.

Trust. *Id*. FM's breach of contract claim (Count I) stems from its termination, which occurred at the latest on March 21, 2021, when Hollister sent the Notice of Termination—more than a month before the Effective Date. *Motion* 18, ECF No. 11-1. Thus, FM is barred and enjoined from asserting Count I and the Motion is denied to that extent. In Counts II through V of the Proposed Counterclaims, FM alleges, among other things, that the Project was not ready for FM to complete its work, that Debtor and the Owner separately—and impermissibly—agreed to extend the completion date, that Hollister was insufficiently staffed, that Hollister failed to adequately compensate FM, and that FM was improperly terminated. Again, because any affirmative claims premised on these actions and events also accrued prior to the Effective Date of the Plan, Counts II through V are similarly precluded.

As an initial matter, Counts II and IV—the claims for unjust enrichment and quantum meruit—are not independent claims under New Jersey law. *See Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 754 (D.N.J. 2013) ("New Jersey law does not recognize unjust enrichment as an independent tort cause of action."); *Danvers v. Bilach*, No. A-4608-08T2, 2009 WL 5084947, at *2 (N.J. Super. Ct. App. Div. Dec. 29, 2009) ("Recovery on the basis of quantum meruit is generally understood to be a part of the law of contracts . . . ."). Rather, they are equitable doctrines to remedy situations where denial of recovery would be unjust. *See Silva v. Silva*, No. A-2326-20, 2022 WL 4542002, at *5 (N.J. Super. Ct. App. Div. Sept. 29, 2022) (collecting cases discussing unjust enrichment as an equitable doctrine); *City Council of City of Orange Twp. v. Edwards*, 455 N.J. Super. 261, 278, 189 A.3d 356, 366 (App. Div. 2018) (citing *Rutgers Cas. Ins. Co. v. LaCroix*, 194 N.J. 515, 529, 946 A.2d 1027 (2008)) (explaining quantum meruit as an equitable doctrine).

FM's proposed counterclaims for unjust enrichment and quantum meruit are bottomed on FM's allegations that Hollister breached the parties' contract by failing to pay FM for work performed. These claims, thus, also accrued prior to the Effective Date and pursuit of an affirmative recovery is barred by the Confirmation Order and Plan.

Finally, Counts III and V of the Proposed Counterclaims assert claims for breach of the covenant of good faith and fair dealing, and seek a declaratory judgment, respectively. The allegations supporting each of these claims are the same allegations upon which FM's breach of contract claim rests. *See Motion* 20-21, ECF No. 11-1; *Proposed Counterclaims* ¶¶ 78-82, 87-89; ECF No. 11-2. Because these claims depend on events that occurred prior to the Effective Date, they, too, are barred by the terms of the Confirmation Order and the Plan.

### 3. Counts I through V (as Recoupment Counterclaims)

The Court acknowledges that FM clarified both on the record during oral argument and in its Reply, that it is not seeking to "assert claims against Hollister that are unrelated to the current adversary proceeding that go beyond its preserved setoff and recoupment rights." *Reply* 8, ECF No. 17. Indeed, Paragraph T of the Confirmation Order states:

> Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Settlement Agreement or this Confirmation Order, **nothing shall modify the rights, if any, of any holder of a Claim**, including a Claim arising from an Executory Contract or Unexpired Lease, **to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to**, . . . (c) **the assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtor, the Liquidating Trustee, or any of their successors**. Notwithstanding the foregoing, the rights of the Debtor, the Liquidating Trustee, and any of their successors to contest a right of setoff or recoupment asserted by any holder of a Claim, including a Claim arising from an Executory Contract or Unexpired Lease are fully reserved and preserved.

*Confirmation Order* 30, ECF No. 1769 in Case No. 19-27439 (emphasis added).

Thus, the Confirmation Order and Plan clearly carve out setoff and recoupment rights as exceptions to the injunction upon which the Trustee's opposition relies. For the reasons which follow, the Court determines that setoff is inapplicable under the circumstances of the case. However, to the extent they seek recovery limited to FM's right to seek recoupment—as carved out in the Plan and Confirmation Order—Counts I through V of the Proposed Counterclaims would survive a Rule 12(b)(6) motion to dismiss. Therefore, FM's Motion is granted as to those Counts for the limited purpose of recoupment.

The Bankruptcy Code does not create an independent right to setoff but recognizes and preserves setoff rights that exist under otherwise applicable non-bankruptcy law—here, New Jersey state law. *See* 11 U.S.C. § 553(a); *In re Stienes*, 285 B.R. 360, 362 (Bankr. D.N.J. 2002); *In re Vill. Craftsman, Inc.*, 160 B.R. 740, 746 (Bankr. D.N.J. 1993). In order to establish setoff rights under § 553(a), the applicable statute, a creditor must satisfy the mutuality requirement— meaning that the debts at issue must be owed from a creditor directly to a debtor and from the debtor directly to that creditor—*and* the creditor's claim against the debtor must have arisen "before the commencement of the case." 11 U.S.C. § 553(a); *In re Rams Assocs., L.P.*, No. 21-2144, 2022 WL 1772995, at *1 (3d Cir. June 1, 2022); *In re Orexigen Therapeutics, Inc.*, 990 F.3d 748, 754 (3d Cir. 2021). Moreover, "setoff" under New Jersey state law is not an independent cause of action and, instead, it is an equitable right that is broadly discussed as a type of cross-demand or counterclaim. *Niessner v. Lunemann*, No. A-4746-18, 2022 WL 2232854, at *16 (N.J. Super. Ct. App. Div. June 22, 2022), cert. denied, No. 087342, 2023 WL 1990691 (N.J. Feb. 10,

16

2023) (stating that "application of a setoff is a matter of equity") (citations omitted).  As previously discussed, the Proposed Counterclaims in this case are either related to an alleged of breach of contract or fraud in the inducement with respect to the Settlement Agreement.  Because the factual allegations underlying each of these claims occurred decidedly *after* Hollister filed for bankruptcy, the Proposed Counterclaims did not arise prior to the commencement of the case as required by the statute.  As a result, counterclaims for setoff are unavailable. 11 U.S.C. § 553(a).

Moreover, a claim for setoff "involves an affirmative recovery on a claim that may be independent of the transaction upon which the plaintiff's claim is based." *Am. Motorists Ins. Co. v. N. Plainfield Bd. of Educ.*, No. A-4680-14T4, 2016 WL 6122867, at *12 (N.J. Super. Ct. App. Div. Oct. 20, 2016).  As discussed, FM is precluded by the Plan and Confirmation Order from asserting affirmative recovery.  Further, FM's proposed claims against Hollister are not independent of the transaction upon which the Trustee's claims against FM are based—they all are premised on the parties' Subcontract or Settlement Agreement.  Therefore, the Proposed Counterclaims do not sound in the equitable right to setoff and are more appropriately characterized as claims for recoupment.

Under New Jersey law, "[r]ecoupment is an equitable defense that allows a party with an otherwise barred claim to assert it as a defense against a party bringing suit, so long as it arises from the same transaction." *Am. Motorists Ins. Co.*, 2016 WL 6122867, at *12 (citing *Beneficial Fin. Co. v. Swaggerty*, 86 N.J. 602, 608–09 (1981); *Bull v. United States*, 295 U.S. 247, 262, 55 S. Ct. 695, 700–01, 79 L. Ed. 2d 1421, 1428 (1935)).  While New Jersey case law establishes that "defendants may not raise this cause of action as a sword . . . [defendants] may raise it as a shield

by way of counterclaim if the counterclaim sets forth a cause of action in equitable recoupment."

*Midlantic Nat. Bank v. Georgian, Ltd.*, 233 N.J. Super. 621, 625, 559 A.2d 872, 874 (Law. Div.

1989) (citing *Gibbons v. Kosuga*, 121 N.J.Super. 252, 256, 296 A.2d 557 (Law Div. 1972)).

Essential to the viability of a counterclaim for recoupment is that the defendant's claim against the

plaintiff arises out of the *identical* transaction as the plaintiff's claim against the defendant. *See,*

*e.g.*, *Superior Air Prod. Int'l, Inc. v. Dir., Div. of Tax'n*, 9 N.J. Tax 463, 470–71, aff'd, 10 N.J. Tax

238 (Super. Ct. App. Div. 1988) (citations omitted); *see also In re Revel AC Inc.*, 909 F.3d 597,

602 (3d Cir. 2018) (discussing recoupment in the bankruptcy context).    Recoupment "is a

defensive and narrow remedy" that can only be used to reduce or eliminate a plaintiff's recovery;

it cannot serve as grounds for affirmative relief. *Aleynikov v. The Goldman Sachs Grp., Inc.*, No.

CV 12-5994, 2016 WL 6440122, at *12 (D.N.J. Oct. 28, 2016) (citing Wright & Miller, 6 Fed.

Prac. & Proc. Civ § 1401 (3d ed)); *Est. of Gimelstob v. Holmdel Fin. Servs. Inc.*, No. A-3341-

18T3, 2021 WL 19220, at *14 (N.J. Super. Ct. App. Div. Jan. 4, 2021) (citing *Swaggerty*, 86 N.J.

at 609).

A counterclaim for recoupment has three essential elements: "(1) [a] single transaction, as

opposed to related or connected transactions; (2) [a]n identity of interests among parties; and (3)

[a] need to balance the equities." *Midlantic Nat. Bank*, 233 *N.J. Super.* at 626 (citation omitted).

Here, a liberal reading of FM's Proposed Counterclaims suggests that the elements of recoupment

are satisfied with respect to Counts I through V.    Both the Trustee's claims against FM and FM's

proposed counterclaims against the Trustee pertain to the parties' Subcontract and Settlement

Agreement. *Compare Complaint*, ECF No. 1 *with Proposed Counterclaims against Hollister*

18

(*Exhibit F to Certification of Counsel*) 99-116, ECF No. 11-2.  Additionally, FM's pleadings are replete with allegations of unfairness, and the need to prevent an unjust result.  Notably, FM does not mention "recoupment" in its Proposed Counterclaims.  Instead, FM asserts claims for breach of contract, unjust enrichment, breach of implied covenant of good faith and fair dealing, quantum meruit, and declaratory relief establishing wrongful termination.  As previously discussed, FM is precluded from affirmatively asserting these claims by the Plan and Confirmation Order and, under the doctrine of recoupment, may use these counterclaims only as a shield against Hollister's claims—not a sword. *See Midlantic Nat. Bank*, 233 N.J. Super. at 625.  However, the fact that the Proposed Counterclaims do not explicitly state a claim for "recoupment" is not dispositive of whether FM has adequately plead a counterclaim for recoupment.  This Court's research reveals that courts have interpreted claims asserted under other theories of law as counterclaims for recoupment. *See, e.g.*, *Aleynikov*, 2016 WL 6440122, at *13 (discussing whether counterclaims for breach of contract, conversion, and misappropriation of trade secrets were characterized as setoff or equitable recoupment); *Midlantic Nat. Bank*, 233 N.J. Super. at 624 (finding that counterclaim asserting that plaintiff had negligently, carelessly and willfully honored forged checks constituted a permissible counterclaim for recoupment).

The Court notes that FM does not provide an exact dollar amount for the damages it seeks. It states merely that it "suffered damages"—without elaboration as to extent or value—and "demands judgment in its favor as to all counter-claims filed . . . together with attorney's fees, costs of suit and any other relief . . . ." *Proposed Counterclaims* ¶ 72, ECF No. 11-2.  Additionally, FM states that it "lost more than $1 million" due to Hollister's bankruptcy and related actions. *Id.*

at ¶ 1.  In contrast, the Trustee's Complaint against FM cites $619,881.24 in damages for additional costs incurred in completing the scope of FM's work, and seeks that amount plus "compensatory, consequential, and incidental damages, attorneys' fees, expert fees, litigation expenses, pre-judgment and post-judgment interest . . . ." *Complaint* ¶¶ 40, 45, 49, 54, ECF No. 1.  Given the figures provided in the respective complaints and the lack of clarity, one could conclude that FM seeks affirmative recovery by way of its Proposed Counterclaims, potentially in excess of the amount the Trustee's claims against FM.  However, the doctrine of recoupment "may be utilized only to reduce or extinguish the plaintiff's recovery." *Swaggerty*, 86 N.J. at 609.  Thus, this Court clarifies that FM's counterclaims for recoupment cannot exceed the amount of Hollister's claim and can only serve to potentially reduce—or eliminate—the amount that Hollister might recover from FM.

The Court is also mindful that FM's Answer asserts that the "Trustee's claims are barred or reduced by the doctrines of recoupment and/or setoff." *Answer* ¶ 16, ECF No. 4.  Thus, recoupment has already been raised in this adversary proceeding as an affirmative defense.  During oral argument, Counsel for FM expressed his position that recoupment should take the form of an *affirmative claim*.  This Court is not the first court to consider whether recoupment is properly characterized as a counterclaim or a defense. *See, e.g.*, *Interdigital Commc'ns Corp. v. Fed. Ins. Co.*, 308 F. App'x 593, 595 (3d Cir. 2009).  In the bankruptcy context, recoupment has been treated as a defense, not a counterclaim. *See, e.g.*, *Id.* at 596–97 (holding that "[a]lthough recoupment may be properly characterized as a counterclaim in certain circumstances" it was characterized as an affirmative defense for purposes of arbitration); *Folger Adam Sec., Inc. v. DeMatteis/MacGregor*

20

*JV*, 209 F.3d 252, 260 (3d Cir. 2000) (collecting case and concluding that the right to recoupment was a defense and not an "interest" that could be sold "free and clear" in a § 363 sale).

However, New Jersey case law establishes that "recoupment *is in the nature of a counterclaim* raised as a defense by a defendant against whom a plaintiff has made some type of money demand." *Superior Air Prod. Int'l, Inc.*, 9 N.J. Tax at 470 (emphasis added); *see also* 20 AM. JUR. 2D COUNTERCLAIM, RECOUPMENT, ETC. § 2 ("The term 'counterclaim' is generic and includes both recoupment and setoff.") (footnotes omitted). This Court's research confirms that that the majority of New Jersey state courts—and federal courts addressing recoupment under New Jersey law—characterize recoupment as an equitable defense *presented as a counterclaim*. *See, e.g.*, *Aleynikov* (discussing counterclaims as either setoff or equitable recoupment); *Pepe v. Cavalry SPV I, LLC*, No. 2:15-08634, 2016 WL 3027335, at *2 (D.N.J. May 26, 2016) (dismissing a counterclaim for recoupment because it did not arise out of the same transaction); *Midlantic Nat. Bank*, 233 N.J. Super. at 624 (finding that negligence counterclaim constituted a permissible counterclaim for recoupment).

Candidly, it is unclear to this Court as to the procedural and substantive differences between the assertion of recoupment as a counterclaim versus as an affirmative defense. The Court declines to engage in that academic exercise beyond the research required to resolve the pending motions. It is enough for this Court to recognize that the doctrine or recoupment is, at its core, a defense with a fundamental purpose to achieve a just result. *Bull*, 295 U.S. at 262; *Swaggerty*, 86 N.J. at 612 (citing *Rothensies v. Elec. Storage Battery Co.*, 329 U.S. 296, 298, 67 S. Ct. 271, 272, 91 L. Ed. 296 (1946)). It is reserved for situations where—as here—a party holds an otherwise

barred claim, and permits that claim to be asserted "as a defense against a party bringing suit, so long as it arises from the same transaction." *Am. Motorists Ins. Co.*, 2016 WL 6122867, at *12 (citing *Swaggerty*, 86 N.J. at 608–09; *Bull*, 295 U.S. at 262).  FM is permitted by the explicit terms of the Plan to assert its rights under this equitable doctrine and may do so in the form of a counterclaim if it wishes.  Admittedly, FM did not raise its right to recoupment until its Reply brief and during oral argument.  Nevertheless, FM has pleaded the doctrine's elements adequately, effectively putting the Trustee on notice of the claims against it and permitting it to prepare an informed defense.  Therefore, the Court will not require FM to file another motion or to submit amended pleadings that more accurately conform to its request to assert counterclaims for recoupment.  The Motion is granted with respect to Counts I through V with the qualification that those counterclaims are limited to recovery available under FM's right to recoupment, and only as a means to reduce or extinguish the Trustee's recovery on his claims.

### C. Cross-Motion

The Trustee's Cross-Motion seeks to enforce the terms of the Settlement Agreement, Confirmation Order, and the Plan and is based on the Trustee's mistaken belief that FM seeks to vacate those orders pursuant to Federal Rule of Bankruptcy Procedure 9024.  For reasons previously stated, the Court denies that request.  The Court further denies the Trustee's request for counsel fees and costs.  The imposition of sanctions is inappropriate under the circumstances.

### IV.      Conclusion

For the foregoing reasons, the Trustee's Cross-Motion is DENIED.  FM's Motion is DENIED in part and GRANTED in part.  Specifically, the Court denies FM's request to assert a Third-Party Complaint with prejudice, denies FM's request to assert Count VI of the Proposed Counterclaims without prejudice, and grants FM's request to assert Counts I through V of the Proposed Counterclaims for the limited purpose of pursuing FM's right to recoupment as a means to extinguish or reduce the Trustee's recovery herein.  Counsel for the Trustee is directed to submit a proposed form of order consistent with this Court's ruling.

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: March 10, 2023